IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| CYRUS II PARTNERSHIP, | § | CASE NO. 05-39857-H1-7 |
| BAHAR DEVELOPMENT, INC., | § | CASE NO. 05-39858-H5-7 |
| AND MONDONA RAFIZADEH, | § | CASE NO. 05-39859-H2-7 |
| | § | (Chapter 7) |
| DEBTORS. | § § | |
| | § | Jointly Administered Under |
| | § | Case No. 05-39857-H1-7 |

### ORIX'S OBJECTION TO TRUSTEE'S RULE 9019
### MOTION TO COMPROMISE WITH UNITED RAFIZADEH
(Relates to Rec. Doc. No. 365)

ORIX Capital Markets, L.L.C., as Special Servicer for Wells Fargo Bank, N.A., Trustee ("ORIX")[1] files this Objection to the Trustee's Motion to Approve Compromise (the "9019 Motion") [Rec. Doc. No. 365] with United Rafizadeh Family, LLP, Schumann Rafizadeh, Flash Vos, Inc., and related entities (collectively "United Rafizadeh") (the "URF settlement").

### INTRODUCTION

1.  On March 29, after consultation with all counsel and after being informed that the Trustee and United Rafizadeh had entered into an oral, contingent settlement agreement, the Court set a hearing for May 23 on one of two matters: the 9019 Motion that would be filed to approve the URF settlement, or if the contingent settlement were not accepted, ORIX's and the Trustee's objection to the claim of Flash Vos, Inc. ("Flash Vos").

2.  On May 5, the Trustee rejected the URF settlement, paving the way for a May 23 hearing on the objection to the Flash Vos claim. Nevertheless, the Trustee did not withdraw the 9019 Motion and instead extended his deadline to accept the URF Settlement and

---

[1] For simplicity's sake, the terms ORIX and the Trust are often used interchangeably.

{N1496536.1}

to withdraw the 9019 Motion, until May 10 and then until May 15. Given that there is no URF settlement as of now, ORIX requested that the Trustee agree to extend ORIX's objection deadline until there was a settlement to consider since the May 23 hearing would now be on the objection to the Flash Vos claim. The Trustee refused ORIX's request.

3. Thus, ORIX finds itself in the absurd procedural posture of having to file this objection to the 9019 Motion when there is no URF settlement for ORIX to object to or for the Court to consider on May 23. Moreover, the Trustee has refused to produce to ORIX the "due diligence" documents produced by United Rafizadeh to the Trustee and his expert in their consideration of the now-rejected URF settlement. The Trustee grounds his refusal in his "term sheet" with United Rafizadeh that requires him to keep the "due diligence" documents confidential until he accepts the URF settlement. The Trustee's refusal to produce "due diligence" documents before May 16 (if then), although understandable given the term sheet, combined with the Trustee's refusal to withdraw the 9019 Motion from the Court's May 23 docket is inherently inequitable and puts ORIX between the proverbial "rock and a hard place."

4. Even if the Trustee and United Rafizadeh enter into a settlement at anytime between now and May 23, the 9019 Motion can not be heard and considered on May 23 because ORIX will not have had the opportunity to conduct any discovery.[2]

5. Nevertheless, because of the timing required by the local rules and the Trustee's refusal to deviate from that timing (despite accommodating United Rafizadeh with two extensions of the settlement deadline on an already incredibly "tight" schedule), ORIX files this

---

[2] When May 5 was the original deadline for the Trustee's unconditional acceptance of the settlement, the Trustee had agreed to produce documents to ORIX on May 6 and for ORIX to depose the Trustee, his expert, and Schumann Rafizadeh on May 16-17. Even when the Trustee extended the deadline to accept the settlement to May 10, ORIX agreed to the compressed discovery schedule to accommodate a May 23 hearing. But with ORIX's need to have its expert review the Trustee's due diligence documents and have the documents before deposing the Trustee and his expert on May 16-17, the Trustee's extension of the settlement deadline has made the discovery and hearing schedule impossible.

objection. In addition, because of the circumstances, ORIX reserves its rights to object on different and additional bases if and when United Rafizadeh and the Trustee actually settle and when ORIX is actually permitted to conduct discovery on any future possible settlement.

## FACTUAL BACKGROUND

6. On December 23, 2004, ORIX obtained a judgment in Louisiana state court against Debtors arising from a loan and mortgage on the Arlington Apartments in Harvey, Louisiana. Although the loan was generally non-recourse, certain misconduct such as fraud and waste of the property made the loan recourse to the Debtors, as the Louisiana court found in its Judgment and Reasons for Judgment. Among other findings, the Louisiana court found that Cyrus committed fraud in obtaining the loan, that Mondona Rafizadeh submitted a false financial statement in connection with the loan, and that Cyrus had committed waste of the Arlington Apartments, which were, in the court's words, in deplorable condition. The Louisiana Court further found that neither Mondona Rafizadeh nor Schumann Rafizadeh were credible witnesses, that they repeatedly refused to give straight answers to questions, and that they engaged in gamesmanship at trial. As of the date of Debtors' bankruptcy filings on June 27, 2005, ORIX's judgment against Debtors was valued at approximately $14.58 million.

7. Post-judgment, the Debtors' games continued during the judgment debtor examination process from refusals to appear to the continued inability to give a straight answer to straight questions to offering as partnership representatives Mrs. Rafizadeh's uncle who had not worked for any Debtor for years and could not answer the most basic questions. But the limited judgment debtor examinations conducted clearly revealed that the United Rafizadeh entities operate as a single business enterprise. The judgment debtor examinations also revealed that Mrs. Rafizadeh, who was the 100% owner and managing member of multiple limited

liability companies that served as the general partner of multiple limited partnerships that owned significant real estate assets, and who was a 43% limited partner in United Rafizadeh Family, LLP, claimed not to own a single asset valued at more than a few dollars. This was so despite living in a home worth hundreds of thousands of dollars, driving a Rolls-Royce, and having represented her worth as recently as 1991 as more than $120 million. She claimed not to own the clothes or jewelry that she wore, and she refused to provide complete income tax returns, claiming it was "all Schumann's."

8.  ORIX also learned of transfers of assets among and between URF entities and other Rafizadeh family members, acting as "fronts" for United Rafizadeh and its entities, that by all accounts were in bad faith and for no consideration. The structure of United Rafizadeh, which was Byzantine to begin with, began to grow more so.

9.  Thus, before Debtors' bankruptcies, ORIX sued them, Schumann Rafizadeh, Flash Vos, Inc., United Rafizadeh Family Partnership, LLP, and more than 50 related entities in Louisiana state court, asserting that Debtors and these entities constituted a single business enterprise under Louisiana law and that each member of the single business enterprise should be wholly liable on the December 23, 2004, judgment in ORIX's favor and against Debtors (the "SBE litigation"). ORIX also sought an injunction in the SBE litigation to stop the repeated transfers of assets within United Rafizadeh, which were an apparent effort to evade liability on the December judgment. Indeed, it was the injunction trial scheduled for June 29, 2005, in the SBE litigation that precipitated Debtors' bankruptcy filings in this Court on June 27.

10. During the 2004 examination conducted in this bankruptcy of Richard Mushinksi,[3] the accountant for the Rafizadehs and their various enterprises, ORIX learned of

---

[3] Mr. Mushinski's failure to turnover documents to the Trustee even after this Court's order because he was not properly dressed when Mr. Tow appeared at his home or because he had no authorization from the Trustee to

{N1496536.1}                                        4

additional transfers of assets away from partnerships controlled by Mrs. Rafizadeh to entities controlled by other Rafizadeh family members or associates. For example, the building at 806 Main Street in Houston, Texas, which is a primary and valuable asset of United Rafizadeh, was owned by HOOBI, LP until some time in 2005. The general partner of HOOBI, LP is HOOBIGP, LLC. Mrs. Rafizadeh is the 100% owner and managing member of HOOBIGP, LLC. The limited partner of HOOBI, LP, is United Rafizadeh Family, LLP. HOOBI, LP transferred the 806 Main Building in 2005 pursuant to a special warranty deed, for little or no consideration, to Azita Management, Inc. This transaction was recorded after Debtors filed for bankruptcy Azita Management, Inc. is a corporation formed and allegedly controlled by Mrs. Rafizadeh's sister, Azita Berglund.[4] When Mr. Mushinski "offices" at 806 Main, he does so in the Azita Management, Inc. suite.

11. ORIX requested that the Trustee seek an injunction to stop these types of transfers, of which the above is but one example. ORIX had sought such an injunction in the Louisiana Court, but the Rafizadehs avoided the June 29, 2005, trial on the preliminary injunction by the filing of these bankruptcies on June 27. The Trustee, however, entered into an "agreed" injunction, which let the Rafizadehs continue business as usual (including real estate transfers for no apparent consideration to entities or persons fronting for the Rafizadehs).

---

turnover the documents (despite the Trustee's requesting them) was the subject of a March 24 hearing on a temporary restraining order. Although ORIX did not obtain the TRO, this Court correctly stated that Mr. Mushinki's testimony could only be described as "pure artifice." The Trustee and Mr. Mushinski have subsequently compromised the Trustee's request for sanctions against Mr. Mushinski, which has not yet been heard by this Court.

[4] This is consistent with the Rafizadehs' pattern of using family members to hold assets. The Plaza Tower in New Orleans, which was the subject of much litigation with the State of Louisiana and others and was repeatedly in the New Orleans Times-Picayune, was transferred back and forth between Rafizadeh entities and an entity allegedly owned by Dr. Bahram Arjmandi, Mrs. Rafizadeh's brother-in-law. Mrs. Rafizadeh's sister, Helen, is married to Dr. Arjmandi. Even the Arjmandi children have been involved in the Rafizadeh enterprise.

Accordingly, once ORIX learned of Azita Management, Inc., Azita Management, Inc. transferred title to the 806 Main Building to Main & Marietta, LP on or about January 25, 2006.

12.     Rodrick Hughes ("Hughes") is the manager and registered agent of Mainmar, LLC, which is the general partner of Main & Marietta, LP (of which Hughes is also the registered agent). Hughes apparently has a long relationship with the Rafizadehs. Among other transactions, United Rafizadeh Family, LLP pledged the Rafizadeh residence and all its personal property and intangibles to Hughes to secure a purported $10 million loan in a transaction recorded in 2006. Then, the evening before the scheduled March 29, 2006, hearing on a variety of matters in this proceeding—including the allowance of ORIX's claim and a settlement with the Trustee—Hughes filed a UCC-1 Financing Statement with Schumann Rafizadeh as the Debtor. The Financing Statement purportedly reflected a security interest that Schumann Rafizadeh granted to Hughes in, among other property, "Schwab Investment Accounts," certain automobiles, and certain interests in pending litigation; the collateral allegedly secured a $1.5 million loan from Hughes to Schumann Rafizadeh. Interestingly, the "filer" of the UCC-1 for Hughes is a Rafizadeh-family attorney, Harry E. Wilbanks (a/k/a H. Erwin Wilbanks), who has represented various members of the Rafizadeh enterprise at different times in litigation and prepared certain transactional documents.

13.     These are but a few examples of the labyrinthine transfers and Byzantine relationships constituting United Rafizadeh that will surely change again once Schumann Rafizadeh knows that ORIX knows about them.

14.     Based on these and other transactions (and others that may not have yet been discovered), ORIX intends to amend the SBE litigation to assert additional claims and to join additional parties.

15. Thus, in conjunction with a settlement between ORIX and the Trustee approved on March 29, 2006 (the "ORIX settlement"), the bankruptcy stay was lifted to permit ORIX to pursue the SBE litigation along with the Trustee, although the parties agreed to abate it until one of several dates (the abatement now expires May 15).

16. Although ORIX claimed that it had a right independent of the Trustee to prosecute the SBE litigation under the *Schimmelpenninck* exception as having suffered a unique harm, rather than litigate the issue, ORIX stipulated and agreed in the ORIX settlement that the SBE litigation was property of the Estates. The ORIX settlement, however, also stipulated that ORIX had the right and standing to prosecute the SBE litigation along with the Trustee. ORIX understood and represented on the record that if the Trustee desired to settle the SBE litigation, ORIX's only recourse was to seek relief in this Court regarding the approval of any settlement.

17. Also as part of the ORIX Settlement, the Trustee released approximately $6.9 million, which represented the entirety of the sale proceeds of the Arlington Apartments on which ORIX had held a first mortgage. Although the entire $6.9 million constituted ORIX's cash collateral, ORIX paid $1 million of the sale proceeds to pay administrative and general unsecured claims of the Estates for the undisputed right to pursue the SBE litigation with the Trustee and to receive a distribution of the remaining $5.9 million in cash collateral. ORIX received the distribution on or about March 31, 2006, leaving ORIX with a deficiency of at least $8.7 million (excluding any post-petition interest and attorneys' fees, which although capped against Debtors, is a continuing loss for ORIX nonetheless).

18. Also on March 29—the same day the ORIX Settlement was approved without objection—the Trustee and URF entered into the oral URF settlement, agreeing to compromise the claims ORIX asserted in the SBE litigation and in which the Trustee intended to

intervene for an approximate $4.3 million payment from United Rafizadeh. The precise amount of the settlement is uncertain, but less than $4.3 million, because the "term sheet" provides that URF's agreement to pay $4.3 million is reduced by any unspecified and uncapped amounts expended by URF during the Trustee's "due diligence" period.

19. The terms of the oral URF Settlement were later reduced to a term sheet, which was filed with the Trustee's Rule 9019 Motion on April 25. ORIX played no part in the negotiation of the URF Settlement or the term sheet.

20. In addition to the payment of $4.3 million minus, URF agreed that Flash Vos would withdraw its proof of claim for a bogus $719,000 "consulting fee" (real estate commission) on the October 2004 sale of the Arlington apartments.[5]

21. As suggested above, under the URF Settlement, the Trustee was given until May 5, 2006, to conduct "due diligence" regarding the adequacy and reasonableness of the settlement based on, among other matters, the financial position of the URF entities and individuals. Thus, Schumann Rafizadeh and the URF entities agreed to disclose certain financial information to the Trustee so the Trustee could evaluate the reasonableness of the URF Settlement amount in light of URF's financial resources. The term sheet specifically prohibited the Trustee from sharing or disclosing any information the Trustee learned during the due diligence period to ORIX, at least until the Trustee definitively accepted the URF Settlement.

22. On May 5, 2006, the Trustee gave notice to URF that it was rejecting the URF settlement because of the inadequate due diligence and the insufficiency of URF's disclosures. Nevertheless, the Trustee has not withdrawn the 9019 Motion because the Trustee

---

[5] See ORIX's Objection to the Flash Vos Claim, Rec. Doc. No. 242.

{N1496536.1}                                    8

and URF extended the May 5 settlement acceptance deadline to May 10 and then to May 15. As of now, there is no settlement with URF.

23. As of May 15, 2006, ORIX has been provided absolutely no information that the Trustee reviewed during the due diligence period. Nevertheless, the deadline for objecting to the URF Settlement is May 15, and ORIX must file this Objection as a result.

24. Even assuming *arguendo* that the entire $4.3 million minus under the rejected URF settlement would be distributed to ORIX, ORIX would still be left with a deficiency on its judgment of at least $4.4 million and probably closer to $5 million (pretermitting the legal issue of whether non-debtors can invoke the Bankruptcy Code to reduce the value of any judgments that may ultimately be entered against them).

25. As the sole remaining unsecured creditor of the Estates, ORIX objects to the rejected URF Settlement as not in the best interest of the Estates.

**THE TRUSTEE CANNOT MEET HIS BURDEN THAT THE SETTLEMENT IS IN THE BEST INTEREST OF THE ESTATES OR WITHIN THE RANGE OF REASON**

26. Under Bankruptcy Rule 9019, the Trustee has the burden of establishing that the settlement is in the best interests of the estate. As the Trustee correctly points out, a settlement in bankruptcy should only be approved if it is "fair and equitable and in the best interest of the estate." *Connecticut Gen'l Life Ins. Co. v. United Cos. Fin. Corp. (Matter of Foster Mortgage Corp.)*, 68 F.3d 914, 917 (5th Cir. 1996).

27. A reviewing court must determine whether the settlement falls "below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2nd Cir.), *cert. denied sub nom* 464 U.S. 822 (1983). Within the Fifth Circuit, this analysis requires a bankruptcy court to consider:

  (1) The probability of success in the litigation, with due consideration for the uncertainty in fact and law,

  (2) The complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and

  (3) All other factors bearing on the wisdom of the compromise.

*American Can Co. v. Herpel (Matter of Jackson Brewing)*, 624 F.2d 605, 608 (5th Cir. 1980); *accord Matter of Foster*, 68 F.3d at 917 (citing *Jackson Brewing*).

  28. "While this Circuit [the Fifth] has not elaborated on the 'other factors bearing on the wisdom of the compromise' . . . [o]ne such factor relevant to the case *sub judice* is the fourth prong to the famous test offered by the Eighth Circuit in *Drexel v. Loomis*: the paramount interest of creditors with proper deference to their reasonable views." *Matter of Foster*, 68 F.3d at 917. Thus, a "bankruptcy court [may] abuse[] its discretion by failing to show adequate deference to the interests of the overwhelming majority of creditors . . . ." *Id.* "We believe a bankruptcy court should consider the amount of creditor support for a compromise settlement . . . ." *Id.*

  29. Although "the desires of the creditors are not binding," a court must nevertheless consider that "the interests of the creditors not the debtors are paramount." *Id.* at 917. Just as in *Foster*, ORIX is prepared to forego whatever it might receive from the URF settlement "in favor of uncertain litigation to establish . . . [its] right to greater loss payments." *See id.* at 918.

  30. Indeed, the First Circuit has gone so far as to say that it should be virtually impossible to approve a compromise where no creditor supports the compromise: "We are also concerned by the absence of creditors' support and by the strength of creditor opposition. . . . No case has come to our attention, however, where a compromise has been imposed without the

support of a single creditor and over the active opposition of the major creditors. " *In re Lloyd, Carr and Co.*, 617 F.2d 882, 891 (1st Cir. 1980).

31. The Tenth Circuit reached a similar conclusion when it vacated approval of a settlement that had been approved by the bankruptcy and district courts over the objection of the only creditor in the case. *Reiss v. Hagmann*, 881 F.2d 890, 892 (10th Cir. 1989). One of the factors bearing on the court's determination was that the only creditor, like ORIX, was also willing and able to cover the costs of the fraudulent conveyance litigation over real estate transferred by the debtor to a trust. *Id.* "At least in a case like that at bar, when there would be no cost to the estate and nothing to pay creditors without success in the lawsuit, we hold that the bankruptcy court abused its discretion in approving a settlement objected to by the sole creditor." *Id.* at 893.

32. In *Jones v. Cage (In re W.J. Services, Inc.)*, 146 B.R. 190 (S.D. Tex. 1991), the court applied the "paramount interest of the creditors" standard to approve the settlement because the settlement would provide a one hundred percent payout to the creditors; it was only the debtors who stood to gain from further prosecution of the suit (if at all). *Id.* at 191. Here, we have the reverse situation—It is only the Debtors (and the Trustee) who stand to gain from compromising the SBE litigation; only ORIX stands to lose.

33. Regardless of the level of deference owed to a creditor, the bankruptcy court's approval "must be an informed one based upon an objective evaluation of developed facts." *Reiss,* 881 at 892. There must be a "substantial factual basis for the approval of a compromise . . . ." *Matter of Jackson Brewing*, 624 F.2d at 608. Approval of a compromise requires "clear support in the record coupled with sound analysis" by the court. *Id.*

34. In the seminal case on approval of bankruptcy settlements, the Supreme Court clearly articulated that a court must have "some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, and mere boilerplate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 434 (1968).

35. In *TMT Trailer*, the Supreme Court reversed a bankruptcy settlement approved by both the District Court and the Fifth Circuit Court of Appeals because of an insufficient record:

> Here there is no explanation of how the strengths and weaknesses of the debtor's causes of action were evaluated or upon what grounds it was concluded that a settlement which allowed the creditor's claims in major part was "fair and equitable." Although we are told that the alternative to settlement was "extensive litigation at heavy expense" and "unnecessary delay," there is no evidence that this conclusion was based upon an educated estimate of the complexity, expense, and likely duration of the litigation. Litigation and delay are always the alternative to settlement, and whether that alternative is worth pursuing necessarily depends upon a reasoned judgment as to the probable outcome of litigation.
>
> The record before us leaves us completely uninformed as to whether the trial court ever evaluated the merits of the causes of actions held by the debtor, the prospects and problems of litigating those claims, or the fairness of the terms of compromise. More than this, the record is devoid of facts which would have permitted a reasoned judgment that the claims of action should be settled in this fashion.

*TMT Trailer*, 390 U.S. at 434, 440-41.

### ORIX'S OBJECTIONS TO SETTLEMENT

36. ORIX objects to the URF settlement for the following non-exclusive reasons:

37.  The withdrawal of the Flash Vos claim provides no value and reduces no risk whatsoever to the Estates because it is indisputably a fraudulent claim for a real estate commission, which is barred by Louisiana law. Indeed, the Trustee previously objected to the Flash Vos claim on this and other bases.

38.  The withdrawal of the Flash Vos claim provides no value and reduces no costs whatsoever to the Estates because discovery has concluded on the claim and the case was already prepared for trial on March 29. Avoiding the final step of actually trying the previously prepared case will save negligible amounts, if any at all.

39.  The Trustee's 9019 Motion contains nothing but "boilerplate" language about saving the expense and avoiding the risk of litigation and is devoid of analysis of either the SBE Litigation or the Flash Vos claim objection, an approach the Supreme Court strongly rebuked in *TMT Trailer*.

40.  Indeed, even a cursory legal analysis of the SBE Litigation against United Rafizadeh would show it has a high probability of success as United Rafizadeh is a "poster child" candidate for being found a single business enterprise based on the following "illustrative" factors applied by Louisiana courts:

> 1. corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control;
> 2. common directors or officers;
> 3. unified administrative control of corporations whose business functions are similar or supplementary;
> 4. directors and officers of one corporation [do not] act independently in the interest of that corporation;
> 5. corporation financing another corporation;
> 6. inadequate capitalization ("thin incorporation");
> 7. corporation causing the incorporation of another affiliated corporation;
> 8. corporation paying the salaries and other expenses or losses of another corporation;
> 9. receiving no business other than that given to it by its affiliated corporations;
> 10. corporation using the property of another corporation as its own;

> 11. noncompliance with corporate formalities;
> 12. common employees;
> 13. services rendered by the employees of one corporation on behalf of another corporation;
> 14. common offices;
> 15. centralized accounting;
> 16. undocumented transfers of funds between corporations;
> 17. unclear allocation of profits and losses between corporations; and
> 18. excessive fragmentation of a single enterprise into separate corporations.

*See Green v. Champion Ins. Co.*, 577 So. 2d 249 (La. App. 1st Cir.), *writ denied*, 580 So. 2d 668 (La. 1991). Among other actions, United Rafizadeh entities have commingled assets, paid employees of one entity with funds from another entity, shifted profits and losses and tax benefits and burdens on a whim unrelated to any "real" transactions, engaged in collusive litigation, back-dated documents, failed to observe business formalities, done business only with each other, and the list goes on. And all of it is orchestrated by Schumann Rafizadeh with Mondona Rafizadeh's complete acquiescence.

41.  Indeed, the predicate for the Trustee's contingent settlement with United Rafizadeh, and the conducting of the financial due diligence before acceptance, is that he and ORIX would succeed on the merits in the SBE Litigation and the real issue is what assets would be available to satisfy any judgment.

42.  The Trustee, by rejecting the URF Settlement on May 5, admitted that he had been precluded until then from conducting adequate due diligence on the reasonableness of the URF Settlement amount, and thus the Trustee can not establish the range of reason for any settlement.

43.  Even if the Trustee later contends that any due diligence inadequacies have been cured with additional disclosures, the Trustee relies on disclosures made by people earlier found by the Louisiana Court to have committed fraud, fabricated and falsified

documents, and provided "incredible" testimony. Such inherently unreliable disclosures are insufficient to establish a range of reasonableness.

44. The last financial information that ORIX has is that United Rafizadeh or some constituency thereof had approximately $6-7 million in bonds, hundreds of thousands, if not several million, more in other investment or cash accounts and real estate investments allegedly worth millions. Thus, the URF Settlement is not within the range of reasonableness.

45. ORIX as the only remaining unsecured creditor of the Estates is the only party injured by the approximately $5 million reduction of its claim. No creditor, assuming any exist after ORIX's payment of $1 million to the Estates, supports the URF Settlement. Under a "paramount interests of the creditors" test, the URF Settlement fails.

46. ORIX has agreed to fund and take the lead in the SBE litigation so that the Trustee will incur few, if any, expenses in pursuing the SBE litigation. Like the creditor in *Foster*, ORIX is willing to assume the risk in the SBE litigation for the prospect of what it believes will be a greater recovery than that provided by the URF Settlement.

47. The URF Settlement arguably requires ORIX to release all of its claims against the Debtors and URF while providing no mutual release for ORIX of URF's and its nominees' pending claims against it.

- o Indeed, Mrs. Rafizadeh has expressly objected that she wants it clear that she can pursue the appeal of the Louisiana Judgment contesting ORIX's claim.
- o URF retains its objection to the allowance of ORIX's unsecured claim and intends to continue to litigate the issue. Thus, not only does ORIX take an approximate $5 million reduction of its claim, it still must incur the cost to litigate the allowance of its unsecured claim in some amount. Although ORIX is exceedingly

certain that its unsecured claim would ultimately be allowed in full and certainly above the $4.3 million that United Rafizadeh intends to pay the Estates, if ORIX is wrong, then the only point of United Rafizadeh paying money to the Estates is to give money back to the Debtors, just one more episode in United Rafizadeh's shell games.

- Moreover, Schumann Rafizadeh has orchestrated class action litigation against ORIX and Wells Fargo in Dallas by indirectly purchasing bonds (through an entity known as Super Future Equities, Inc.), in the Trust that holds the Cyrus loan. Because these claims are not and can not be part of the URF Settlement, the URF Settlement does not result in "global peace."[6] A conclusive end to all disputes between United Rafizadeh, its constituents, and nominees and ORIX was the Trustee's purported motivation or goal in pursuing settlement. That end is not achieved here.

48. When there are no other creditors to be satisfied but ORIX, when the SBE Litigation is strong on the merits, and when ORIX is willing to pay for the SBE litigation and assume whatever risk that entails, one must conclude, albeit reluctantly, that the only motivation the Trustee could possibly have for settling over ORIX's objection is the payment of a quick and substantial fee to the Trustee based on the URF settlement.

---

[6] Likewise, any counterclaims that may be asserted in the Super Future Equities case or any ORIX claims that are not part of the same transaction or occurrence as the SBE Litigation are not released.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** ORIX respectfully requests that this Court deny the Trustee's Rule 9019 Motion to Compromise as not in the best interests of the Estates and for all other relief to which ORIX is entitled.

**DATED:** May 15, 2006.

Respectfully submitted

/s/ Nan Roberts Eitel
NAN ROBERTS EITEL (LA Bar #19910)
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
The Watergate
2600 Virginia Avenue, NW
Suite 1113
Washington, DC  20037
Telephone: (202) 944-1105
Fax: (202) 944-1109

R. PATRICK VANCE
(La. Bar No. 13008)
(SDTX. Bar No. 30331)
CORINNE G. HUFFT
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8000
Telecopier: (504) 582-8011

**ATTORNEYS FOR ORIX CAPITAL MARKETS, L.L.C., AS SPECIAL SERVICER FOR WELLS FARGO BANK, N.A., TRUSTEE**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all parties entitled to receive notice by serving a copy on the parties listed on the attached service list on May 15, 2006.

/s/ *Nan R. Eitel*