**FORM 1**

**FDN**

**IN THE SUPREME COURT OF SOUTH AUSTRALIA**

**Action No. 452 of 2008**

**IN THE MATTER OF FLASH VOS PTY LTD (ACN 112 709 707)**

**ORIX CAPITAL MARKETS, LLC,** Plaintiff

---

**AFFIDAVIT OF HUGH MASSEY RAY III**

---

**Filed on behalf of the former director of Flash Vos Pty Ltd (ACN 112 709 707), Homayoon Vaezi, by:**

Iles Selley Lawyers
38 Carrington Street
**ADELAIDE SA 5000**

**Telephone** (08) 8110 1700
**Facsimile** (08) 8110 1799
**Email** niles@ilesselley.com.au
**[L1643]**
**[P2373]**

**Settled by:** **Nicholas Iles**

**Date and time of filing or transmission:** **20 May 2008**



**FORM 14** **Rule 162**

**AFFIDAVIT OF HUGH MASSEY RAY III**

I, **HUGH MASSEY RAY III**, of 11 Greenway Plaza, Suite 1400, Houston, Texas, 77046, United States, Attorney and Counsellor-at-Law, **MAKE OATH AND SAY** as follows:

1. I am a shareholder in the law firm of Weycer Kaplan & Zuber P.C.

2. I am an Attorney and Counsellor-at-Law duly licensed to practice law in the United States Courts of the Southern, Eastern, Western and Northern Districts of Texas and in all State Courts in the State of Texas.

3. I am also licensed to practice before the Fifth Circuit Court of Appeals and before the Supreme Court of the United States of America. I have been licensed to practice for more than 10 years.

4. I am certified by the Texas Board of Legal Specialization in Business Bankruptcy Law. Of the 82,259 attorneys who are currently licensed to practice law in Texas (another 12,451 are licensed but inactive), I am one of only 160 Texas Attorneys who are certified in this area, with only 44 certified in Houston (Harris County), Texas.

5. In 2005, I was hired by Mrs. Mondona Rafizadeh (**"Mrs. Rafizadeh"**) to file her personal bankruptcy in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. She has successfully received her discharge and is effectively "out" of bankruptcy. Late last year, I was also engaged to act for, *inter alia*, her husband, a Mr. Schumann Rafizadeh (**"Mr. Rafizadeh"**), who was at that time a defendant in connection with proceedings issued out of the United States Bankruptcy Court, Southern District of Texas, Houston Division (**"Texas Court"**) (Action No. 05-39857-H1-7 jointly administered with Adversary Proceeding No. 07-03301) (together **"the US proceedings"**). Mr. and Mrs. Rafizadeh were defendants in the US proceedings. Mr. Rafizadeh remains so, but Mrs. Rafizadeh is not.

6. I swear this Affidavit in respect of proceedings issued out of the Supreme Court of South Australia, namely an application by Orix Capital Markets, LLC (**"Orix"**) to have a deregistered Australian proprietary company, Flash Vos Pty Ltd (ACN 112 709 707)

(**"Flash Vos"**), reregistered with the Australian Securities and Investments Commission.

7. The statements in this my Affidavit are based upon my own personal knowledge, except where otherwise appears.

## A. BACKGROUND TO THE US PROCEEDINGS

8. Mrs. Rafizadeh commenced her bankruptcy by filing a voluntary petition for bankruptcy in June of 2005. The filing of a voluntary petition stayed collection litigation pending against her and others. These collection proceedings sought to enforce a judgment rendered by a State Court in Louisiana (**"the original Louisiana proceedings"**) on the application of Orix. The original Louisiana proceedings involved Mrs. Rafizadeh as well as a Louisiana Partnership, Cyrus II (**"Cyrus II"**), and a Texas Corporation, namely Bahar Development, Inc. (**"Bahar"**). In June 2005, Mrs. Rafizadeh filed a voluntary bankruptcy petition in the Louisiana proceedings.

9. Subsequently, Mrs. Rafizadeh was granted a full discharge of all of her debts existing on or before the filing of her bankruptcy petition in the Louisiana proceedings, including the discharge of the debt to Orix. Now produced and shown to me marked **"HMR 1"** is a true copy of Mrs. Rafizadeh's discharge.

10. The legal effect of this discharge is found at Title XI of the United States Bankruptcy Code at section 524. The discharge bars any future suit against Mrs. Rafizadeh by Orix to collect a pre-bankruptcy debt. Likewise, Orix cannot take any further action against Mrs. Rafizadeh in respect of this matter.

11. Orix sued a number of defendants in the Louisiana State Court to collect from them under "alter-ego"/"single business enterprise" theories and to recover transfers of assets from the debtors to third parties ("**the Louisiana SBE Litigation**"). The Bankruptcy Trustee substituted in as the plaintiff of the Louisiana SBE Litigation (in place of Orix) for reasons discussed later. The Trustee and Orix essentially lost that litigation *"without prejudice"*, meaning that they could re-file the suit in a court that had jurisdiction.

12. On June 25, 2007, the causes of action asserted in the Louisiana SBE litigation were re-filed in the Texas Bankruptcy Court as an "Adversary Proceeding" (essentially a lawsuit) No. 07-3301. ("**the Adversary Proceeding**"). The Trustee in the Louisiana SBE Litigation, Mr Rodney D. Tow (**"the Trustee"**), was named as a plaintiff in the

Adversary Proceeding. The Adversary Proceeding seeks to collect on the Judgment by recovering asset transfers or imposing liability under other theories, such as "alter-ego".

13. In the Adversary Proceeding, the Bankruptcy Judge issued a judgment on 16 November 2007 that dismissed Mrs. Rafizadeh as a party in a manner that prevents subsequent suit against her. The American term for this dismissal is *"with prejudice".* In Australia, I am informed the distinction is between the concept of 'dismissal' and 'discontinuance'. The former creates a *Res Judicata* whereas the latter does not. In Mrs. Rafizadeh's case, the claim against her was "dismissed" in the Australian sense.

14. Now produced and shown to me marked **"HMR 2"** is a true copy of the Bankruptcy Court's Judgment of 16 November 2007 dismissing the action against Mrs. Rafizadeh. Also exhibited and marked **"HMR 3"** is a true copy of the Bankruptcy Court's *Memorandum Opinion* (or *Reasons*) explaining the basis for the dismissal of the Louisiana proceedings.

15. An uncontroversial, yet succinct, explanation of the US proceedings was given by Bankruptcy Court Judge Marvin P Isgur – who will most likely be the Trial Judge in the US proceedings - in a recent *Order Compelling Attendance at Deposition*, dated May 8 2008 (Docket #585). Now produced and shown to me marked **"HMR 4"** is a true copy of this *Order.*

16. The Bankruptcy Court's explanation as to the background of the US proceedings is generally correct. However, in order to assist the Court, I have corrected some misstated matters of fact in that statement. My corrections are identifiable in a smaller font and in [brackets]. The footnotes below are duplications of the footnotes which appear in the *Order* itself.

17. The Texas Court's description of the background facts was as follows:

*17.1. "On or about July 6, 1999, Cyrus II Partnership[1] ... borrowed* [US]*$6,400,000, secured by a lien interest in the Arlington Apartments in Harvey, Louisiana. Mondona Rafizadeh personally guaranteed the loan, but the guarantee could be called only under certain defined circumstances. The loan was originated*

[1] Cyrus II's general partner was Bahar Development, Inc. Bahar Development, Cyrus II and Mondona Rafizadeh have filed bankruptcy. Their cases are jointly administered under case number 05-39857.





*by Love Funding Corporation and shortly thereafter assigned to the 1999 MLMI C-1 Trust. Wells Fargo Bank* [Trustee of the Trust], *and ORIX has acted as the* [former] *Master and* [current] *Special Servicer for Wells Fargo."*

17.2. *"The $6.4 million loan was non-recourse, except for similar circumstances as would invoke Mrs. Rafizadeh's guarantee. Cyrus II defaulted on the loan. Consequently, ORIX sued in Louisiana state court to enforce the note and foreclose on the Property. ORIX's suit was consolidated with a countersuit against ORIX."*

17.3. *"The 24th Judicial District Court found that liability arose under the note and guaranty. The Louisiana judgment held each debtor personally liable for the remaining principal amount of the debt (*[US] *$6,282,671.16), accrued non-default interest of* [US]*$1,274,226.10, default interest of* [US]*$1,611,673.70, a prepayment premium of* [US]*$1,268,413.60 and other miscellaneous amounts totalling* [US]*$456,366.40. The total judgment was awarded for* [US]*$10,893,360.96 plus attorneys' fees. The Louisiana Court later awarded attorneys' fees and expenses totalling* [US]*$2,130,649.00. The Court ordered the sale of the Arlington Apartments for* [US]*$6.7 million* [the sale price was actually over $US7m, but once fees and costs were deducted, the proceeds remaining were US$6.9m] *and granted ORIX a first priority lien on these funds. The proceeds were placed an* [sic] *escrow account to be distributed when the ORIX judgment became final."*

17.4. *"The judgment was appealed on March 4, 2005. In May 2005, ORIX filed a lawsuit in Louisiana against Cyrus II, Bahar, and Mondona Rafizadeh ("Debtors") and allegedly related entities asserting that the Debtors and the entities were operating as a single business enterprise ("SBE Litigation"). ORIX sought to collect its judgment from all of the defendants."*

17.5. *"The litigation was stayed on June 27, 2005, when Cyrus II, Bahar, and Mondona Rafizadeh filed for chapter 7 bankruptcy relief."*

17.6. *"ORIX's claim with post-judgment interest, as of the petition date, was* [US]*$14,160,348.75, plus post-judgment attorneys' fees and costs. On October 1, 2005, the Trustee objected to the ORIX claim asserting it included*

*approximately* [US]*$2.8 million in improper penalties and charges. ORIX filed proofs of claim on January 4, 2006, for approximately* [US]*$14.5 million.*[2]*"*

17.7. *"The Trustee engaged in mediation in an attempt to settle the claims between the Debtors and ORIX. The mediation failed. ORIX and the Trustee then became engaged in various disputes*[3] *which were eventually settled by a compromise*[4] *approved by the Court on March 29, 2006* [otherwise referred to as the **"Third Amended Settlement Agreement"**]. *Pursuant to the compromise, the Trustee and ORIX agreed to jointly prosecute this suit.*[5]*"*

17.8. *"The ninety-eight page complaint includes seventeen causes of action including claims for avoidance of fraudulent transfers, breaches of fiduciary duty, aiding and abetting breaches of fiduciary duty and civil conspiracy. It also seeks a finding of single business enterprise, alter ego, substantive consolidation, and constructive trust. The complaint also requests an accounting. The original complaint was supplemented on October 29, 2007, to join two Australian companies, one Nevada limited liability company (Universal), one US citizen who resides in China and one resident of Harris County, Texas. The fifty-six page supplement adds four new causes of action, requests a temporary restraining order and supplements a request for injunctive relief."*

---

[2] Other claims filed against the estates total approximately $1.1 million. The Trustee maintains that these other claims may be reduced to an amount as low as $23,541.11.

[3] The disputes included the Trustee's objection to ORIX's claim, disagreements over the best way to recover from the non-debtor allegedly-related entities, and the lack of unencumbered funds for use by the Trustee for administrative expense. The proceeds from the sale of the Arlington Apartments were the only cash of the estate and ORIX had demanded a turnover of the proceeds. In addition, ORIX sought to lift the stay to proceed with the Louisiana SBE litigation maintaining that the claims were not property of the bankruptcy estates and even if they were, ORIX was the only legitimate creditor of the estates and would be entitled to the majority, if not all of the recovery.

[4] The compromise provided, *inter alia*, the following: (i) the Trustee would stipulate to the allowed secured ORIX claim; (ii) the SBE claims would be deemed the sole property of the estates; (iii) the Trustee would prosecute the SBE claims on behalf of the estate; (iv) ORIX was a party-in-interest with standing to join in the Trustee's prosecution of the SBE claims as a co-plaintiff; and (v) ORIX would subordinate its lien and claims to allow up to [US]$1,020,000.00 to be distributed to the estates for payment to creditors with allowed claims.

[5] Subject to this Court's approval, ORIX has agreed to fund this litigation. The Court has held extensive hearings on the funding agreements entered into between ORIX and the Trustee. To be sure, the Court will not allow ORIX to influence the Trustee's business judgment by having the ability to exercise control over the litigation. The Court approved the initial funding agreement with ORIX and has not yet completed the hearing on a revised funding agreement.

17.9. *"The litigation between the parties is complex, bitter, entangled and expensive. It is characterized by numerous motions, ancillary lawsuits filed in other jurisdictions, discovery abuse, and hardball tactics. Although the litigation between the parties has proceeded for many years, this adversary proceeding was filed only 10 months ago. In that short period of time and in that proceeding alone, there have been approximately 125 motions filed and 33 hearings held. The Court has issued approximately 68 orders. The parties have engaged in extensive, contested discovery."*

18. Though, with respect, I do not agree entirely with the Judge's reasoning as to some of the conduct of the Attorneys in the US proceedings, I nevertheless agree wholeheartedly with his Honor that the litigation between the parties has been *"expensive"*, *"complex"* and *"bitter"*. In my experience, it has been some of the most expensive, hard fought and (at times) bizarre litigation I have ever been a part of.

**B. THE EXPENSE OF THE US PROCEEDINGS**

19. The case has been very expensive to run thus far. The precise amount of legal fees expended by Orix is unknown, but the amount is large. Based on the testimony of their corporate representative, Mr Greg May, and the "Borrower Expense Report" produced by Orix stating some (but not all) of the expenses that Orix has charged its principal, I understand Orix's costs to be in excess of some US$5m.

20. The Trustee's legal fees are also very high. Orix first funded the Trustee with US$1.02m in March 2006, pursuant to the *Third Amended Settlement Agreement*. Now produced and shown to me marked **"HMR 5"** is a true copy of the *Third Amended Settlement Agreement*. One year later, the Trustee was out of money. The Trustee and Orix agreed that Orix would pay all legal fees and expenses incurred up until December 31, 2007. However, this *"funding agreement"* is currently on appeal to an intermediate court, with likely further appeal from there, regardless of the outcome.

21. The Trustee's fees and expenses are evidenced by various *Interim Fee Applications* made by the Trustee's Counsel over the past 6 months. Now produced and shown to me marked **"HMR 6"** is a true copy of the Trustee's Special Counsel's *Fifth Interim Fee Application*. By the *Fifth Interim Fee Application*, the Special Counsel represents that, as of December 31, 2007 it has incurred over US$2.6m in fees and expenses. This is only one of the Trustee's five law firms' fees.



HR
EE

22. Likewise, Orix has sought legal fees in excess of US$2m in relation to the Louisiana proceedings, and total fees in the US proceedings in excess of another US$2m. In other words, as of December 31, 2007, Orix and the Trustee have expended over US$7m to collect a debt in the principal amount of US$6.4m.

23. I am also aware that the sales proceeds of the Arlington Apartments (the collateral) were US$6.9m – which proceeds have been released. $5.9m in cash was paid to Orix as required by the March 2006 *Settlement Agreement* (see **"HMR 5"**).

24. Further, from Orix's "Borrower Expense Report", I know that Orix paid Thomson Playford Lawyers in Adelaide, Australia in excess of $20,000 in calendar year 2007 – months before the present Supreme Court proceeding was filed.

**C. THE COMPLEXITY OF THE CASE**

25. The docket sheet in the US proceedings (docket sheet number 07-3301) now exceeds some 600 docket entries. Now produced and shown to me marked **"HMR 7"** is a true copy of the docket sheet in adversary number 07-3301 as of May 19, 2008. The docket sheet for the related adversary proceeding 05-3715 (a case seeking to hold Mrs. Rafizadeh liable for the debt to Orix notwithstanding her discharge – a case Orix subsequently abandoned) is likewise very active – with over 100 docket entries. Now produced and shown to me marked **"HMR 8"** is a true copy of the docket sheet in adversary number 05-3715.

26. The main bankruptcy case – where the administration of the estate assets takes place – is likewise massive, with over 745 entries over nearly three years. The number of pleadings, orders and hearings has grown since Judge Isgur's May 8, 2008 ruling – see **"HMR 4"**.

27. Each side has exchanged tens of thousands (perhaps hundreds of thousands) of documents. Orix and the Trustee have paid hundreds of thousands of dollars to experts and consultants. The defendants have engaged numerous law firms on several continents. The plaintiffs have as well. Dozens of depositions have been taken. My client, Mr. Rafizadeh, wants the US proceedings to end.

**D. THE BITTERNESS IN THE CASE**

28. This litigation has been bitterly fought.

29. Mr Rafizadeh has sued for invasion of privacy after Orix sent someone to commence videotaped surveillance of him, Mrs. Rafizadeh and their children. Mrs. Rafizadeh

had her wedding ring removed from her finger by a Sheriff in a Louisiana Courthouse pursuant to a writ obtained by Orix. The Bankruptcy Court disqualified both Mr. Rafizadeh's predecessor counsel, Locke, Lord Bissell & Liddell LLP, and Orix's predecessor counsel, Winstead, Sechrest & Minick, P.C, for alleged conflicts of interest. Orix has been fined $13,000 by the Texas Court for discovery abuses. Other defense counsel (not myself) have also been sanctioned in an amount to be determined.

30. Further, Mr. Rafizadeh's son was on the front page of the *Houston Press* newspaper with an article *"UH Student Investigates ORIX"* in March of 2006. Now produced and shown to me marked **"HMR 9"** is a true copy of that press article as printed from the Houston Press website – http://www.houstonpress.com/2007-03-29/news/uh-student-investigates-orix/full. Mr. Rafizadeh's son also started a web-page www.predatorix.com, which is currently the subject of a defamation suit.

## E. THE CASE FOR NOT JOINING FLASH VOS

31. The reason I have described the complex and acrimonious litigation to this Court at such length is that I believe that the Court should know what will happen if Flash Vos is reregistered now (as opposed to later, an option I discuss below).

32. If Flash Vos is reregistered now, it will probably be served and brought into the US proceedings. If the Supreme Court of South Australia enters an Order for the reregistration of Flash Vos, it will be dragged into expensive and complex litigation in circumstances where it has held no assets for a number of years. If Flash Vos is reregistered and the Bankruptcy Court does not allow Flash Vos in, then I would foresee a malignant expansion of the Texas proceedings to Adelaide. New proceedings would probably be commenced by angry creditors in this jurisdiction.

## F. AN ALTERNATIVE OPTION

33. Even assuming *arguendo* that all of the plaintiff's allegations in the US proceedings were true, Flash Vos is not an immediate transferee of or recipient of funds from the Debtors. Instead, this would-be-defendant is a third or fourth generation recipient of funds. It received money from Super Future Equities, LLC, who had previously received some stocks and cash from United Rafizadeh LP, who had formerly received a transfer of partnership interests from Mrs. Rafizadeh and Bahar.

34. The basic concept of fraudulent transfer litigation in the United States of America is that an asset which is conveyed either with constructive or actual intent to hinder, delay, or defraud creditors may be returned to the debtor for the benefit of the creditors. This legal concept is called *"avoidance"*. The trustee avoids fraudulent transfers by suing the initial transferee. However, if the asset has been transferred to a subsequent transferee and the subsequent transfer is also fraudulent (either constructively or actually), the trustee seeks avoidance from the subsequent transferee as well as the initial transferee. Likewise, if that intermediate transferee thereafter transferred an asset as a constructive or actual fraud upon creditors, the transferee of that transfer would be sued to avoid the asset transfer back to the debtor and so on. The trustee recovers the transferred assets, then pays them to creditors of the debtor in order of priority.

35. An explanation of how the transfers are avoided from initial, intermediate or subsequent transferees is found in 11 U.S.C. §550. Section 550 is set out below in its entirety:

36. *§ 550. Liability of transferee of avoided transfer.*

*(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title [11 USCS § 544, 545, 547, 548, 549, 553(b), or 724(a)], the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—*

*(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or*

*(2) any immediate or mediate transferee of such initial transferee.*

*(b) The trustee may not recover under section [subsection] (a)(2) of this section from—*

*(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or*

*(2) any immediate or mediate good faith transferee of such transferee.*

*(c) If a transfer made between 90 days and one year before the filing of the petition—*

*(1) is avoided under section 547(b) of this title [11 USCS § 547(b)]; and*





*(2) was made for the benefit of a creditor that at the time of such transfer was an insider;*

*the trustee may not recover under subsection (a) from a transferee that is not an insider.*

*(d) The trustee is entitled to only a single satisfaction under subsection (a) of this section.*

*(e) (1) A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of—*

*(A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by or accruing to such transferee from such property; and*

*(B) any increase in the value of such property as a result of such improvement, of the property transferred.*

*(2) In this subsection, "improvement" includes—*

*(A) physical additions or changes to the property transferred;*

*(B) repairs to such property;*

*(C) payment of any tax on such property;*

*(D) payment of any debt secured by a lien on such property that is superior or equal to the rights of the trustee; and*

*(E) preservation of such property.*

*(f) An action or proceeding under this section may not be commenced after the earlier of—*

*(1) one year after the avoidance of the transfer on account of which recovery under this section is sought; or*
*(2) the time the case is closed or dismissed.*

37. Note that under subsection (b), the Trustee may seek avoidance of a transfer from the initial transferee without regard to whether that transfer was made in good faith or for fair value. For subsequent transferees, however, the transfer is not avoidable if made for good faith and value.

38. In the United States bankruptcy system, a trustee must commence suit against recipients of fraudulent transfer within *two* years of the orders for relief (the voluntary





petition date) – ie: a trustee must commence suit against the initial transferee before the expiration of this two year limitation period.

39. The limitation for a trustee to act against the initial transferee is set forth in 11 USC § 546(a) set out below.

40. *§ 546. Limitations on avoiding powers*:

> *(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title [11 USCS § 544, 545, 547, 548, or 553] may not be commenced after the earlier of—*
>
> *(1) the later of—*
>
> *(A) 2 years after the entry of the order for relief; or*
>
> *(B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title [11 USCS § 702, 1104, 1163, 1202, or 1302] if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or*
>
> *(2) the time the case is closed or dismissed. . . . .*

41. The two year period in this case expired on June 27, 2007. The Trustee first sued Flash Vos (which does not, of course, "exist") by filing a *Verified Supplemental Complaint* in October of 2007. The proceeding against Flash Vos is therefore out of time, even assuming Flash Vos existed.

42. Orix and the Trustee cannot pursue this suit unless they make the October 2007 complaint "relate back" to the June 2007 *Verified Complaint*, or unless equitable tolling or some other doctrine excuses the expiration of the statute of limitations.

43. If the Trustee obtains a judgment against the initial and all subsequent transferees, he may seek a money judgment to satisfy the avoidance. If that money judgment is not paid, the Trustee becomes a creditor of the defendant, able to sue transferees of that defendant for fraudulent transfer under applicable state fraudulent transfer law. This remedy is available even if the Trustee has missed the two-year limitations period under section 546.

44. In my respectful submission, this fact demonstrates that it makes little sense to reregister Flash Vos now. The Trustee, if he wins against the American entities and becomes their creditor, can assert the identical state-law remedies against Flash Vos. Thus, if the Trustee succeeds in his suit against the initial defendant (United





Rafizadeh) and also against Super Future Equities LLC, and obtains a money judgment for the value of assets transferred and if that judgment is unsatisfied by those two defendants (each of which Orix maintains has millions in assets), he may *then* commence reregistration proceedings and sue Flash Vos after avoiding the first two transfers.

45. The Trustee, as stated above, has already missed the statute of limitations under the bankruptcy code. Instead of attempting to use procedure or equitable tolling to avoid those limitations, it makes more sense for him to sue under State law. Assuming the applicability of Nevada or Texas's enactment of the Uniform Fraudulent Transfer Act, that limitations period is four years from the date of transfer.

46. The plaintiff, Orix, in the current Supreme Court of South Australia proceedings, would have this Court presume that Flash Vos is a necessary and indispensable party to the US proceedings. However, the Trustee and Orix have not actually espoused that position in the US proceedings. Nor do I believe that they will or can adopt that position in the Supreme Court proceedings.

47. The Trustee's allegations, as characterized by Judge Isgur, are that assets were transferred using *"sham transactions"* to conceal them from creditors. I say that even if that were true, to recover the allegedly fraudulent transfer to Flash Vos as a third or fourth generation subsequent transferee, the Trustee would be required to avoid the initial and all intermediate transfers.

48. In the meantime, the defendants in the US proceedings have raised very significant defenses relating to Statutes of Limitation, Statutes of Repose, and Statutes that abrogate or curtail the power of courts to utilize "alter ego" as an equitable remedy. If these motions are successful, the initial transfers will not be avoidable. If the initial transfers are not avoidable, the subsequent transfers are also not avoidable.

## G. MANY DISPOSITIVE MOTIONS ARE PENDING THAT WOULD CUT OFF SUIT AGAINST THE INITIAL TRANSFEREE (THEREBY TERMINATING ANY FRAUDULENT TRANSFER SUIT AGAINST FLASH VOS AS A SUBSEQUENT TRANSFEREE)

49. The defendants in the US proceedings have already won *Summary Judgment* in their favor on the plaintiffs' count for "substantive consolidation" of non-debtor defendants' assets with the estates of the debtors. The form of Order in respect of this *Judgment* is currently being drafted and circulated. The *Summary Judgment* dismisses a form



HA
EE

of equitable relief sought by the plaintiffs – that is – that the Court would combine the assets and liabilities of all debtors with the assets and liabilities of all defendants. The Court held that such relief was not allowed as a matter of law. Specifically, state laws govern property rights and remedies. The Federal Bankruptcy Court was not willing to create a new Federal remedy similar to "alter ego".

50. Further, the defendants have recently filed a *Summary Judgment Motion* to dismiss the Trustee's claim based upon *"single business enterprise"*, which the Texas Supreme Court does not recognize. The single business enterprise claim is basically a claim for general partnership liability. If multiple entities with inter-connected ownership and familial relationships combine for a common purpose such that the public would assume they are dealing with a single enterprise, a Court could consider, as a remedy for creditors who dealt with the enterprise, that the enterprise liabilities flow to all constituent members. It is critical to note that Orix's debt in this instance was created in 1999 and Flash Vos was not formed until 2005. It is improbable that Flash Vos combined for a single partnership purpose with the Debtor in 1999, because it was not formed until 2005. Thus, as to Flash Vos I say that the single business enterprise argument is nothing more than a red herring.

51. In addition, the defendants have brought a cause of action in the Louisiana State Court for nullification of the original judgment obtained against Mrs. Rafizadeh and the other debtors in the original Louisiana Litigation. The nullification - a cause of action peculiar to Louisiana law - seeks to vacate the judgment based upon the *"ill-practices"* of Orix. In the nullification suit, Orix is alleged to have made misrepresentations to the court, and failed to disclose relevant evidence.

52. The defendants have also challenged Orix's ability to collect *Judgment* because Orix previously collected a settlement from UBS/Painewebber in the amount of US$19,375,000. The US$19,375,000 was based on, among other things, alleged deficiencies relating to the Arlington Apartments Loan. Accordingly, the defendants have sought to challenge Orix's claim against the estate under the single *"satisfaction rule"* and/or the *"double recovery"* rule, or because Orix lacks the capacity to collect. The briefing on this motion is hundreds of pages in length and highly technical. The Court is requesting additional briefing on the issues raised in this matter, and the resolution (for either side) is nearly certain to be appealed, then appealed to an even higher court. If Orix lacks capacity to collect or if the debt to Orix has been otherwise satisfied, then the US Litigation is over – as all other creditors are provided for.

## H. SIGNIFICANT ASSETS HAVE BEEN "FROZEN" BY AN AGREEMENT BETWEEN THE DEFENDANTS - SUCH THAT ORIX IS PROTECTED

53. Mr Rafizadeh and many of the other defendants have agreed to various Court-ordered injunctions sought by the Trustee. Those injunctions, *inter alia*, forbid the defendants from conveying or transferring certain property without Court approval.

54. What is obvious to me is that, if Orix is to be believed, the assets currently enjoined appear to exceed the amount of the alleged debt owed to Orix. As shown by the claims' registers of the debtors' bankruptcy cases, Orix has filed a proof of claim for US$14m. After filing that claim, Orix received a *cash* payment in the amount of US$5.9m pursuant to the *Third Amended Settlement Agreement* (referred to by Judge Isgur as the *"compromise"* dated March 29, 2006 – paragraph 14.7 hereof) . From the defendants' viewpoint, the US$5.9m settled a secured claim of $6.9m. Now produced and shown to me marked **"HMR 10"** is a true copy of the claims' register. Orix has never amended their Claim. They have, however, testified and argued that they have a deficiency remaining of between $15 and $17 million – including expected legal fees and costs.

55. The following assets are some of those assets currently under injunction issued by the Texas Court:

    55.1. approximately $3.8 million in cash and securities held in a TD Ameritrade brokerage account in the name of Universal Sourcing LLC;

    55.2. Mr Rafizadeh's 10,500 square foot 6 bedroom, 9 bathroom house;

    55.3. An office building at 806 Main Street in Houston, Texas, which the Trustee contends is worth approximately US$10m;

    55.4. an office building called "Imperial Tower" in Columbus, Ohio, which the Orix contends is worth US$2.8 to US$3.2 million in 2005; and

    55.5. Certain liens on a building at 806 Main Street.

56. Mr. Rafizadeh does not own all of those assets. Other Defendants do. Those defendants are parties to the Adversary Proceeding.

57. I strongly disagree with the conclusions reached by Orix's expert, Mr Saul Solomon, as to the value of some of the assets the subject of the injunctions. I say that his expert report and testimony to the effect that the "Rafizadeh Enterprise" had





US$42,461,121 of which only US$1,900,000 was traced to Flash Vos is wrong. Nevertheless, Orix itself contends that in the United States entities that are part of the "enterprise" hold more in assets than Orix is owed.

58. Orix's *Original Verified Complaint* (attached to the Affidavit of Mr Sam Carragher dated 9 April 2008) refers (I say, wrongly) to over US$80m in assets (most as partnership interests) being transferred as part of this fraudulent transfer claim. However, if those allegations are right (and I say they are not), if Orix is to be believed, there should be ample assets within the United States of America or under the control of United States-based entities to satisfy what remains of Orix's claim. Only US$2-3m was ever allegedly transferred to Flash Vos. I am not representing that I know the value of the American entities or their assets. Orix, however, has claimed large values. Accordingly, even if they are wrong in their representations of value to the Bankruptcy Court, they should be estopped from taking a contrary position before this Court.

## I. ORIX CANNOT BE THE PROPER PARTY TO SEEK RE-REGISTRATION OF FLASH VOS

59. In the *Third Amended Settlement Agreement* (see **"HMR 11"**), Orix agreed (at paragraph 5) that the Trustee owned and controlled all SBE Claims, which specifically includes the claims brought against Flash Vos. Moreover, Orix's counsel has stipulated in Court that Orix does not own or control any of the claims asserted in the present US proceedings.

60. Finally, to erase any doubt in the Court's mind that Orix is not the proper party to bring the Supreme Court of South Australia proceedings, I draw the Court's attention to the fact that the Texas Court now knows that Orix has commenced this suit. In a hearing on Friday, May 9, 2008, Judge Isgur commented that such action by Orix, even if it is put forward with the *"trustee's permission"* is *"troubling"*. Judge Isgur states that Orix does not have standing, rather the Trustee does. Now produced and shown to me marked **"HMR 11"** is a true copy of Judge Isgur's statements at page 53 of the Transcript of the hearing before him on May 9, 2008. I have not reproduced the transcript in full given its length (223 pages).

61. I respectfully aver that the application by Orix to have Flash Vos reregistered is totally inappropriate at this time. Orix is not the proper plaintiff. Further, I say that the Trustee (who is the proper party) can apply to reregister Flash Vos, but only if he wins





his suit against the predecessor transferees. Otherwise, an impecunious entity would be made party to expensive and bitter litigation.

62. I know the facts deposed to herein of my own knowledge, except where otherwise appears.

**SWORN** at Washington DC by )
**HUGH MASSEY RAY III** )
this 20th day of May 2008 )

Before me: )

ELIZABETH ESSERY
SECOND SECRETARY

AUSTRALIAN EMBASSY
AUSTRALIA
WASHINGTON