

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
08/01/2008

| | | |
|---|---|---|
| **IN RE:** | § | |
| **CYRUS II PARTNERSHIP** | § | **CASE NO: 05-39857** |
| **and** | § | |
| **BAHAR DEVELOPMENT, INC.** | § | |
| **and** | § | |
| **MONDONA RAFIZADEH, MONDONA** | § | |
| **RAFIZADEH** | § | |
| **Debtor(s)** | § | |
| | § | **CHAPTER 7** |

**MEMORANDUM OPINION ON TRUSTEE'S RETENTION**
**OF EXPERT WITNESSES (relates to docket no's 794, 797, and 805)**

For the reasons set forth below, the Court finds the expert witnesses set forth in docket

number 794 need not be retained as "professional persons" pursuant to 11 U.S.C. § 327.  The

Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334.  This is a core proceeding

under 28 U.S.C. § 157.

*Background*

Voluntary chapter 7 petitions were filed by Mondona Rafizadeh, Cyrus II Partnership,

and Bahar Development, Inc. on June 27, 2005.  The precipitating event that gave rise to the

petitions was a $10,893,350.96 judgment issued on December 23, 2004 by the 24th Judicial

District Court for the Parish of Jefferson, Louisiana. The judgment was in favor of ORIX Capital

Markets, L.L.C. ("ORIX") and against Debtors.  With post-judgment interest, the total amount

awarded to ORIX as of the petition date was $14,160,348.75 plus post-judgment attorneys' fees

and costs.

ORIX aggressively sought to collect the judgment in Louisiana.  ORIX alleged, *inter*

*alia*, that the Rafizadehs and a myriad of other entities were alter egos and operated as a single

1

business enterprise (the "SBE Litigation").  The litigation was stayed upon the bankruptcy filing. ORIX is the principal creditor of the estate and has a lien on estate assets.

After engaging in multiple disputes, the Trustee and ORIX entered into a compromise and settlement agreement.  The settlement provides that the SBE claims are property of the estate, the Trustee will prosecute the claims on behalf of the estate and ORIX is a party-in-interest with standing to join in the Trustee's prosecution of the claims as a co-plaintiff.

On June 21, 2007, Trustee and ORIX filed adversary proceeding 07-3301 against Mondona Rafizadeh, her husband Schumann Rafizadeh and multiple allegedly related entities. They asserted claims for avoidance of fraudulent transfers, breaches of fiduciary duty, aiding and abetting breaches of fiduciary duty and civil conspiracy.  The suit also seeks a finding of single business enterprise, alter ego, substantive consolidation, constructive trust and requests an accounting.

### Trustee's Notice of Retention of Expert Witnesses

On July 1, 2008, the Trustee filed a Notice of Trustee's Retention of Testifying expert Witnesses.  In the Notice, the Trustee lists seven purported expert witnesses.  The Trustee asserted in the Notice that he need not file an application to employ these expert witnesses as "professional persons" under § 327.

Mondona Rafizadeh and her husband, Schumann Rafizadeh, promptly filed an Expedited Motion for Order to Show Cause requesting the Court order the Trustee to show cause as to why he should not be required to comply with § 327 and file applications to employ these persons.

The Court, therefore, must answer the following question: Are testifying experts employed by the Trustee "professional persons" under 11 U.S.C. § 327?

Section 327 provides as follows:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327. Bankruptcy Rule 2014 implements § 327. FED. R. BANKR. P. 2014. The Trustee does not dispute that the expert witnesses are "professionals." Rather, the Trustee argues that to trigger § 327, professionals must "undertake duties that are 'central' to the administration of the estate." Tr. Rsp at ¶ 16 (citing *In re Seiling Assoc. Ltd. P'ship*, 128 B.R. 721, 723 (Bankr. E.D. Va. 1991)). The Trustee argues that because these expert witnesses are retained only to present evidence at trial, their work is tangentially related to the administration of the estate. Therefore, approval under § 327 is not required.

While the Bankruptcy Code does define "disinterested persons," it does not define "professional persons" or explain what duties a person must undertake to "assist the trustee in carrying out the trustee's duties." *See* 11 U.S.C. § 105(14) (defining disinterested person). The Trustee's duties, however, are set forth in § 704. These duties include to "collect and reduce to money the property of the estate for which such trustee serves…" and to "investigate the financial affairs of the debtor." 11 U.S.C. § 704(a)(1) and (a)(4). Therefore, under a very broad interpretation of § 327, a trustee's testifying expert witness in a suit to recover estate assets could fall under "assist[ing] the trustee in carrying out the trustee's duties."

The Bankruptcy Code, however, suggests that Congress did not intend § 327 to be applicable to every person the trustee hires. For example, § 330 provides that, without notice or a hearing, the trustee can act on behalf of the estate and use the property of the estate in the ordinary course of business. 11 U.S.C. § 330(c)(1). This ability has prompted much litigation, generally in chapter 11 cases, as to who is hired in ordinary course of business as opposed to hired as a "professional person" under § 327.

3

To make such a determination, courts have looked to whether a person is "central" to the administration of the estate in classifying the person as a "professional" under § 327.  *See In re Seiling Assoc. Ltd. P'ship*, 128 B.R. 721, 723 (Bankr. E.D. Va. 1991) (environmental toxicology consultant could be hired in the ordinary course of Debtor's business without court approval); (*In re Johns-Manville Corp.*, 60 B.R. 612 (Bankr. S.D.N.Y. 1986) (lobbyist retained to perform services in the ordinary course of debtor's business "performed a function completely external to the reorganization process" and therefore did not fall under § 327 "professional."); *In re Seatrain Lines, Inc.*, 13 B.R. 980 (Bankr. N.Y. 1981) (holding that maritime engineers employed in the course of Debtor's business would "play an important role in the mechanics of [Debtor's] operation," but were not professionals under § 327 because their retention would not "affect the administration of [Debtor's] reorganization.").

The Court in *Johns-Manville* explained, "the phrase 'professional persons,' as used in § 327(a) is a term of art reserved for those persons who play an intimate role in the reorganization of a debtor's estate. Thus, although the [person] may possess a high degree of expertise in their fields, this expertise is not the proper focus of the § 327(a) definition of 'professional persons.'"  *In re Johns-Manville Corp.*, 60 B.R. at 619.

Expert witnesses, however, do not cleanly fall within the category those of hired in the ordinary course of business.  Regardless, cases addressing the characterization of an expert witness as a "professional person" have looked to the "central to the administration of the estate" standard.  *Elstead v. Nolden (In re That's Entm't Mktg. Group, Inc.)*, 168 B.R. 226, 230 (N.D. Cal. 1994) (holding that accountants retained by the Trustee's special counsel to testify in "collateral litigation" did "not assume a 'central role in the administration of the bankruptcy'" and were not therefore, subject to § 327); *In re First Am. Health Care of Georgia, Inc.*, 208 B.R. 996 (Bankr. S.D. Ga. 1996) (finding § 327 inapplicable in retention by Debtor's criminal defense

4

counsel of accounting firm for expert testimony in collateral criminal proceeding); *In re Babcock Dairy Co. of Ohio, Inc.*, 70 B.R. 691 (Bankr. N.D. Ohio 1987) (finding that expert witness testifying in non-core district court adversary proceeding was not a professional under § 327).

In *Elstead*, the Court explained:

> An expert witness is not in the position to formulate strategy or to manage the estate and the liabilities of the estate. While one could argue that the litigation involves an attempt to "acquire assets of behalf of the estate," the expert witness plays only a tangential role in this process, and thus under these circumstances the accountants were not "professionals" within the meaning of § 327.

*Id.* at 230 (footnotes omitted).

Chief Bankruptcy Judge Steen of this district confronted this issue in *In re Dunhill Resources, Inc.*, No. 03-41264-H2-11 (Bankr. S.D. Tex. Apr. 5, 2005).  In *Dunhill*, Debtor's counsel sought approval for expert fees for the engagement of FTI Consulting Inc. ("FTI").  The Court did not allow the expert witness fees finding Debtor's counsel erred in failing to obtain approval for the engagement of the expert witnesses under § 327.

In *Dunhill*, FTI was purportedly hired "to analyze and to testify in support of the Debtor's proposed chapter 11 plan at the anticipated contested chapter 11 confirmation hearing." *Id.*  It is clear from Judge Steen's memorandum opinion, however, that Debtor failed to establish that FTI's employment was to be limited to expert witness testimony.  It appeared that FTI believed it was being retained by Debtor, not counsel, while Debtor was working on a chapter 11 plan of reorganization.[1]  *Id.* at 2.  A draft engagement letter was transmitted between the parties which Judge Steen characterized as "a broad engagement for financial advisory services, not a limited engagement for expert witness testimony."  *Id* at  4.  Further, Judge Steen found that even if FTI's work was limited as the parties claimed, the work went to the "heart" of forming a chapter

---

[1] The case was converted to a chapter 7.

11 plan including "liquidation analysis, analysis of the best interest of creditors' test, and analysis of the cash needs of compromise." *Id.* at 10.

Counsel argued a majority rule had developed that expert witnesses were not "professional persons" under § 327. *Id.* at 6-7. Judge Steen thoroughly analyzed the existing case law and found it inconclusive as to a establishing a majority rule. *Id.* at 7-10. (citing *In re Marlin Oil Co.*, 83 B.R. 50 (Bankr. D. Co. 1988); *In re Anthony J. Napoleon*, 233 B.R. 910 (Bankr. N.J. 1999); *Elstead*, 168 B.R. 226; *In re Babcock Dairy*, 70 B.R. 691; *In re First Am. Health Care of Georgia, Inc.*, 208 B.R. 996; *In re Seatrain Lines, Inc.* 13 B.R. 980; *In re Seiling Assoc. Ltd. P'ship*, 128 B.R. 721; *In re Johns-Manville corp.*, 60 B.R. 612; *In re Agrus Group 1700 Inc.*, 199 B.R. 525 (Bankr. E.D. Pa. 1996)). He did find that the cases all "achieve reasonable results on the facts that they adjudicate." *Id.* at 10. This Court agrees.

Accordingly, without a definition of "other professional persons" and what tasks are "assist[ing] the trustee," the Court will look to case law. While there is no majority rule as to whether expert witnesses fall within "other professional persons" of § 327, courts have been almost unanimous in looking to the subject matter of the expert's testimony and evaluating how closely such matter is related to core bankruptcy issues. This Court will follow the same approach.

In this proceeding, the Notice of Trustee's Retention of Testifying Expert Witnesses provides the following descriptions of the expert witnesses who have not yet been retained under § 327:

> **Dave Cowen - G-C Partners, LLC**
> Cowen was originally retained as an expert by ORIX, but he is now being jointly retained by both the Trustee and ORIX to provide expert testimony and opinions. He is a technology expert, who has been asked to analyze and evaluate the novelty and technological efficacy of the software and various hardware components that have been commercially developed, or which remain under development, by the Defendants, particularly SFE and Flash VOS, Inc.

**Colin Cahoon - Carstens & Cahoon LLP**
Cahoon was also originally retained as an expert by ORIX, but is now being jointly retained by both the Trustee and ORIX to provide expert testimony and opinions. He is an attorney and a patent expert, who has been asked to analyze and evaluate the propriety of the manner in which SFE has chosen to develop and exploit its intellectual property assets, including its activities in working with Chinese companies. Specifically, Mr. Cahoon will express his expert opinion as to whether SFE has acted in a manner that is consistent with the business practices of a legitimate company in developing and commercially exploiting its IP assets/portfolio.

**Dwight Olson and Fernando Torres - CONSOR Intellectual Asset Management**
CONSOR is being jointly retained by both the Trustee and ORIX to provide expert testimony and opinions. It has been asked to attempt to develop a valuation of SFE based upon available information, as well as to assess the value and nature of the financial investments made in SFE, and to determine whether SFE has been managed and operated in a manner that is consistent with what technology investors would typically require.

Docket no. 794.[2]  SFE and Flash Vos are two of the defendants in adversary proceeding 07-3301.

It is alleged that they are alter egos of the Rafizadehs and have been used to perpetrate a fraud by

receiving and transferring millions of dollars beyond the reach of the estate creditors.

Mr. Cowen's and Mr. Cohoon's opinions are being used to determine whether these two

defendants are legitimate enterprises.  While this may aid in a determination of alter ego, a

technology expert and a patent expert offering opinions as to the business practices of an entity

not in bankruptcy and not yet determined to be an alter ego of a bankrupt party is far removed

from the Trustee's central duties in the administration of the bankruptcy case.

Mr. Olsen and Mr. Torres will aid in valuing a defendant which is alleged to be an alter

ego of the estate. If SFE is determined to be an alter ego, the valuation may become relevant in

---

[2] The Notice references three other persons.  One person has already been retained pursuant to § 327.  The other two persons are persons who the Trustee is not retaining, but who have been retained by ORIX to provide expert testimony and opinions.  The Trustee lists these persons because of a possibility of relying on their testimony and opinions at trial.  Because the Court is holding that § 327 is inapplicable to the testifying experts, under these facts, the Court holds that § 327 is likewise inapplicable to the non-testifying experts.

later formulating a payout to creditors.  However, this is not a reorganizing chapter 11 where such valuation will be relevant in confirming a plan.  *Cf. In re Dunhill Resources, Inc.*, No. 03-41264-H2-11 (Bankr. S.D. Tex. Apr. 5, 2005).  This is a liquidating chapter 7.  One creditor has a lien on essentially all of the estate assets.  The opinions of Mr. Olsen and Mr. Torres are related to a finding of alter ego, not to the bankruptcy itself.  SFE has not been found to be an alter ego of the estate.  The Court must address the issues on the facts it has before it today.  Their activities are not central to the administration of the estate.

Additionally, the Court finds that the very unique facts of this case further remove these testifying experts from the requirements of § 327.  One of the many reasons offered by courts for the purpose of this § 327 is "to eliminate volunteerism and thus aid the court in controlling estate expenses."  *In re Garden Ridge Corp.*, 326 B.R. 278, 281 (Bankr. D. Del. 2005) (quoting *In re Haley*, 950 F.2d 588, 590 (9th Cir. 1991)).  In this bankruptcy case, the disputes between the Trustee and ORIX arose, in part, due to the lack of unencumbered funds for use by the Trustee for administrative expenses.  For this reason, the compromise and settlement between the Trustee and ORIX provided that ORIX subordinated its lien and claims to allow up to $1,020,000 of funds encumbered by ORIX's lien to be distributed to the estates for payment to creditors with allowed claims.

The Trustee still, however, lacked funds to prosecute these claims.  ORIX and the Trustee, therefore, entered into a "Funding Agreement."[3]  The funding agreement provided that ORIX would pay for the estates' prosecution of this litigation. After a hearing on the matter, the funding agreement was approved by the Court on April 26, 2007.   The funding agreement

---

[3] Titled the "Second Amended Funding Agreement,"

expired on December 31, 2008.  The parties have entered into a second funding agreement[4] which has been approved by this Court.[5]

As detailed in footnote five, ORIX is funding the litigation.  ORIX has agreed that if it has an administrative claim from funding this litigation, it will be subordinated to essentially all other claims of the estate.  Consequently, no creditor will be affected by the payment of these experts.  The Court recognizes that there may, if enough funds were recovered, be money available for equity.  However, before paid, ORIX's putative claim for reimbursement under the funding agreement (which would include costs for expert witnesses) must be allowed by this Court as an administrative claim.  At that point, the Court would review excessive spending thus protecting equity holders.

Other reasons offered for the purpose of § 327 include avoiding the appearance of a conflict of interest, *In re Vouzians*, 259 F.3d 103 (2d Cir. 2001), a judicial check on the trustee's power, *Id.*, to allow for the participation of lawyers while remedying the lack of debtor's incentive to negotiate attorney's fees for cost-effective counsel, *In re Bressman*, 327 F.3d 229 (3d Cir. 2003), to preserve the integrity of bankruptcy to protect debtors from overreaching by professionals, *Halbert v. Yousif*, 225 B.R. 336 (E.D. Mich. 1998), and  to ensure loyalty to the

---

[4] Titled the "Revised Third Funding Agreement with ORIX Capital Markets, L.L.C." Although this Funding Agreement is titled the *third* funding agreement, it is actually the second funding agreement presented to this Court.

[5] The agreements essentially provide that ORIX will supply funds to: (i) pay all existing administrative expense claims in full upon allowance; (ii) pay ongoing professional fees and administrative expense claims incurred in continued prosecution of the SBE claims and administration of the estates; and (iii) ensure recovery to allowed general unsecured claims.   Any administrative claim ORIX may have from funding this litigation will be subordinate to (i) all allowed administrative expense claims paid or payable from the Settlement Funds or the Remaining Settlement funds; (ii) pre-petition allowed general unsecured claims against the Estates up to the amount of $151,041.11 (this is the total amount of estimated unsecured claims); (iii) all allowed administrative expense claims entitled to payment from the Advanced Amounts pursuant to the Agreement; and (iv) all allowed administrative expense claims that are Excluded Expenses (defined in the agreement).   The Court has conducted contested hearings on the funding agreements and has issued written findings of facts and conclusions of law on the second funding agreement in determining such agreement is in the best interest of the estate.

bankruptcy client, *In re Wheatfield Business Park LLC*, 286 B.R. 412 (Bankr. C.d. Cal. 2002). 2A Bankr. Service L. Ed. § 16.9 (See Bankruptcy Service for Digests of Decisions and Purpose of Statute which provides a compilation of cases citing different purposes behind § 327). Most of these reasons were stated in evaluating the employment of professionals in the bankruptcy case itself, not in adversary proceedings. Regardless, the Court finds that none of these purposes are substantially satisfied by requiring the Trustee to file a § 327 application under the facts of this case.[6]

The existing case law consistently requires § 327 applications when expert witnesses are forming opinions and testifying as to matters central to the administration of the estate. The experts in the Trustee's notice are testifying as to non-central matters. Accordingly, the Court finds the Trustee need not file an application under § 327 to retain the testifying experts set forth in docket number 794 for the purposes set forth therein. A separate order will issue.

Signed at Houston, Texas, on July 31, 2008.

MARVIN ISGUR
United States Bankruptcy Judge

---

[6] The Fifth Circuit has previously declined to give a broad reading to a broadly worded statute affecting bankruptcy. In *In re Wood*, the Fifth Circuit interpreted Section 157(b)(2)(O) under Title 28. 825 F.2d 90 (5th Cir. 1987). Section 157(b)(2)(O) states a core proceeding includes, "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." 28 U.S.C. § 157(b)(2)(O). While noting the possibility to give this statute a "broad reading," the Fifth Circuit narrowly interpreted it stating that "otherwise, the entire range of proceedings under bankruptcy jurisdiction would fall within the scope of core proceedings, a result contrary to the ostensible purpose of the 1984 act." *Id.* at 95. Although the Court is not faced with a purpose as clear as the 1984 act, under the facts of this case, there is little purpose in requiring the trustee to file applications under § 327.